IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 11-00202-01-CR-W-ODS |
| ALLEN L. FOX, | ) ) ) |
| Defendant. | ) ) |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant Fox's Motion to Suppress (doc #19). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On August 12, 2011, a Criminal Complaint was filed against Allen Fox. On August 31, 2011, the Grand Jury returned a one count indictment against defendant Fox. The indictment charges that on August 11, 2011, defendant Fox possessed with the intent to distribute fifty grams or more of methamphetamine.

On November 1, 2011, an evidentiary hearing was held on defendant's motion to suppress. Defendant Fox was represented by retained counsel Lance D. Sandage. The Government was represented by Assistant United States Attorney Catherine A. Connelly. The Government called Officers Jeremie Stauch and Frank Bunney of the Independence, Missouri Police Department as witnesses. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On August 2, 2011, shortly after midnight, Officer Jeremie Stauch was dispatched to the Timberwind Apartment complex in Independence on a domestic violence call. (Tr. at 5-6) When he arrived, Officer Stauch discovered a boyfriend and girlfriend who lived together with a child were in a verbal argument. (Tr. at 6-7) The girlfriend claimed the boyfriend was under the influence of methamphetamine and wanted him to leave. (Tr. at 7) Officer Stauch calmed the parties down, decided to

separate them and gave the male subject a ride to his mother's house. (Tr. at 7) Prior to this incident, Officer Stauch did not know either of these individuals. (Tr. at 7)

2. The male subject told Officer Stauch that he was upset because he had recently gotten off of methamphetamine, but then he had been introduced to an individual named Allen and now he was back on methamphetamine and it was causing a separation between him and his girlfriend and child. (Tr. at 7-9) The male subject said that he was getting together with Allen every night to every other night to smoke methamphetamine. (Tr. at 9) The male subject advised that Allen normally carries a pound of methamphetamine on him and when he delivered drugs, he would go to and from Kansas City on I-70, 24 Highway and Sterling Avenue. (Tr. at 9-10, 12) The male subject stated that Allen occasionally carried the methamphetamine in the engine compartment of his car. (Tr. at 10) The male subject told Officer Stauch that Allen drove a silver, possibly a newer Cadillac. (Tr. at 10) Officer Stauch testified that while the male subject appeared to be high, he seemed to understand what he was doing and saying. (Tr. at 8) The drive from the Timberwind Apartment complex to the male subject's mother's house took approximately ten to fifteen minutes. (Tr. at 8)

3. After dropping off the male subject at his mother's house, Officer Stauch continued patrolling his assigned area. (Tr. at 12-13) Officer Stauch observed a silver Cadillac traveling westbound on 23rd Street in roughly the same area that the male subject indicated that Allen transported methamphetamine. (Tr. at 13) Officer Stauch had the dispatcher run the license plate of the silver Cadillac. (Tr. at 13-14) Officer Stauch received information that the vehicle was registered to an Allen Fox. (Tr. at 14) Officer Stauch had the dispatcher run a computer check on Allen Fox and dispatch advised that Allen Fox had a suspended license and had warrants out of Kansas City. (Tr. at 14) By this time, Officer Stauch had driven into Kansas City. (Tr. at 14) Officer Stauch testified that he does not have jurisdiction to conduct a traffic stop in Kansas City. (Tr. at 14) However, Officer Stauch could have radioed dispatch and had Kansas City officers effectuate the stop. (Tr. at 53-54) Officer Stauch decided to hold onto the information and stop the vehicle at a later date if he observed it again in Independence. (Tr. at 14)

4. Within the next few days, Officer Stauch did some research on Allen Fox and discovered that he had a felony warrant for violent drugs. (Tr. at 57-59) Officer Stauch interpreted violent drugs to mean the hardcore drugs such as methamphetamine and cocaine. (Tr. at 59) Officer Stauch had no additional contact with the male subject who had provided information to him about Allen. (Tr. at 64-65)

5. On August 11, 2011, Officer Stauch observed what he believed to be the same silver Cadillac in the area of 24 Highway and Independence Avenue, which is near the area that was identified by the male subject on August 2 as the corridor used by Allen to transport methamphetamine. (Tr. at 14-15) Officer Stauch followed the vehicle. (Tr. at 15-16) Officer Stauch had dispatch run the plates to confirm his suspicion that it was the same vehicle. (Tr. at 17) It appeared to Officer Stauch that when the driver of the silver Cadillac observed the police car following him, he drove in a manner as if he were trying to lose the officer. (Tr. at 16) Officer Stauch did not have his emergency lights or siren on. (Tr. at 16-17)

6. Officer Stauch observed the driver of the silver Cadillac commit a traffic violation, that is he crossed the center line. (Tr. at 17, 65) Officer Stauch activated his emergency lights and the silver Cadillac stopped. (Tr. at 17) Officer Stauch testified that the car stop was also justified given the fact that he believed the driver of the vehicle had outstanding warrants. (Tr. at 97) The car stop also could have been justified on the basis of "suspicious driving," i.e. driving in a manner that the officer believed was intended to elude police officers. (Tr. at 97) Prior to making contact with the driver of the silver Cadillac, Officer Stauch radioed dispatch to run Allen Fox through the computer and requested a second unit and a K-9 to respond. (Tr. at 18, 69) Officer Stauch made these arrangements because of the information he had previously obtained from the male subject that Allen carried methamphetamine and because there were outstanding warrants for Allen Fox. (Tr. at 18) In addition, Officer Stauch had discovered that Fox had a felony drug warrant out of Independence. (Tr. at 18-19, 62) Officer Stauch asked for the second unit because he believed there would be a drug arrest of Fox. (Tr. at 19) Officer Stauch asked for the K-9 unit so the vehicle could be checked for drugs. (Tr. at 19)

7. Officer Stauch approached the silver Cadillac. (Tr. at 19) Officer Stauch advised the driver of the reason for the stop and asked to see the driver's information, vehicle registration and insurance. (Tr. at 19) The driver identified himself as Allen Fox and presented his driver's license. (Tr. at 19-20) Officer Stauch testified that Fox appeared to be shaky and nervous and stated that Fox would not look at the officer. (Tr. at 20) Fox stated that he was in the area because he was going to a friend's house, but he was not able to say who the friend was or where the friend resided. (Tr. at 20) Officer Stauch returned to his patrol vehicle and waited for the other officers to arrive. (Tr. at 20) Dispatch reported back that Fox had a suspended driver's license and warrants out of Kansas City and Independence. (Tr. at 69-70)

8. Officer Hicks arrived within a couple minutes. (Tr. at 21) The officers then approached the vehicle and ordered defendant Fox to exit the vehicle due to outstanding warrants for his arrest. (Tr. at 21) Fox exited the vehicle. (Tr. at 21) The officers searched Fox, put him in handcuffs and placed him in Officer Stauch's patrol vehicle. (Tr. at 21) Fox was arrested for driving while suspended and on several warrants. (Tr. at 52) Officer Stauch called for a tow unit. (Tr. at 21) Officer Stauch testified that it is standard procedure to tow a vehicle when the driver is arrested. (Tr. at 21) Officer Hicks took inventory of items that would be listed in an inventory search. (Tr. at 75)

9. Officer Stauch stated that he began a search of the vehicle pursuant to standard procedure and stated the following when asked for the basis of the search:

> With ... the information I'd received regarding – from my confidential source[1] regarding the drugs being delivered to and from Kansas City and with his warrant out for his arrest for the methamphetamine, that's why I searched.

---

[1] Officer Stauch testified that he does not take background information on an individual when he develops the individual as a confidential informant. (Tr. at 39) By developing confidential informants, Officer Stauch means that he talks with individuals during the course of his patrol and thereby gains information. (Tr. at 40) Officer Stauch did not know whether his "confidential source" had any criminal history. (Tr. at 47-48)

3

(Tr. at 21-22) The Independence Police Department's written policy relating to the search of movable objects provides in part:

> **Search of Movable Objects:** The United States Supreme Court ruled in *Carrol v. United States* (1925) that there is a necessary difference between searching a dwelling and searching an automobile ... or other movable object. Because these objects can be quickly moved it is often not possible for police to obtain a warrant. The following are minimum requirements for searching a vehicle under the "moving vehicle" rule:
>
> 1. Officers must have probable cause to believe that the vehicle contains articles which they are entitled to seize and for which a warrant could be obtained (e.g., contraband or evidence of a crime). When these conditions exist, the entire vehicle including contents may be searched.

(Government's Ex. 2 at 3; Tr. at 23-24) Officer Stauch believed this provision of the policy entitled him to search the entire vehicle. (Tr. at 24) Officer Stauch testified that this was the provision of the policy that he depended on in conducting his search of the vehicle. (Tr. at 24) Officer Stauch believed that he had probable cause to search the vehicle. (Tr. at 72)

10. Officer Stauch initially searched the interior of the vehicle where defendant Fox had been sitting. (Tr. at 24) Officer Stauch next searched under the hood and in the trunk of the vehicle. (Tr. at 24) On the passenger seat of the vehicle, Officer Stauch found a Bushnell case containing a large amount of money (i.e. approximately $3,680.00). (Tr. at 24-26; Government's Ex. 3) Officer Stauch testified that he could see a large amount of money protruding from the case even before he opened it. (Tr. at 76) Also within the Bushnell case were gambling receipts for $6,444.00. (Tr. at 26-27; Government's Exs. 4, 4-A and 4-B) Nothing of significance was found inside the trunk. (Tr. at 27)

11. Officer Stauch searched the engine compartment of the vehicle because he had information that Fox used the engine compartment to transport drugs. (Tr. at 27) When Officer Stauch first opened the hood, he looked across and saw a clear cellophane type of material in the passenger fender of the vehicle. (Tr. at 27-28; Government's Ex. 5) Within the cellophane was a large Ziploc baggie containing a white substance. (Tr. at 37; Government's Ex. 9) Officer Stauch then observed a black bag located behind the battery next to the firewall. (Tr. at 31; Government's Ex. 6) This black bag contained two baggies of a white substance and a silver scale. (Tr. at 36-37) In the fuse portion of the vehicle, Officer Stauch discovered a black digital scale. (Tr. at 34; Government's Ex. 8) Officer Stauch testified that scales such as those found are used to weigh methamphetamine prior to sale. (Tr. at 36)

12. Officer Frank Bunney, a K-9 handler, arrived and was told that a large amount of narcotics had been discovered in the vehicle and that the officers had probable cause to search. (Tr. at 122-23, 136) Officer Bunney asked that the drugs that had already been discovered be removed from the engine compartment for the safety of the dog because if the dog did hit and went over inside the hood of the vehicle, he might tear into the plastic and possibly ingest the drugs. (Tr. at 32-33, 84, 123) Officer Bunney testified that if his dog bit into even a quarter gram of crack, meth or heroin, it could

4

Case 4:11-cr-00202-BCW   Document 46   Filed 02/23/12   Page 4 of 12

kill him. (Tr. at 116) The drugs were removed from under the hood of the Cadillac and placed on the hood of Officer Stauch's police vehicle which was behind the Cadillac. (Tr. at 123-24, 150) The dog did not alert to the drugs sitting on the hood of Officer Stauch's police vehicle as he was walked around the Cadillac. (Tr. at 156) Officer Bunney testified that the wind may have had something to do with that, but in any event, the dog should not have hit on the drugs sitting on the police vehicle because Officer Bunney was directing the dog to search the Cadillac. (Tr. at 156-57) The hood of the Cadillac was open. (Tr. at 126) Officer Bunney took his dog around the Cadillac to search for other narcotics in the vehicle. (Tr. at 133-34) The dog alerted to the passenger's side fender area, i.e. the area from where drugs had been removed. (Tr. at 126) The dog jumped up onto the engine block and began scratching. (Tr. at 127) Officer Bunney testified that based on his experience, the dog would have hit on the fender/wheel well area even if the hood had been closed because the odor would have come out from the engine compartment through the wheel well. (Tr. at 154-55)

13. Officer Bunney joined the K-9 unit in September 1998. (Tr. at 110) Officer Bunney has been working with his partner, K-9 Angus, since July 2005. (Tr. at 109-10) Officer Bunney testified that the entire K-9 unit in the Independence Police Department has an organized nine-hour training day three days per month. (Tr. at 113) The K-9 units also attend week-long training seminars every year in different places within the state. (Tr. at 114) Finally, each year, every K-9 unit in the Independence Police Department has to certify through the Missouri Police K-9 Association. (Tr. at 110) The K-9 units are tested for certification with four odors–marijuana, meth, heroin and coke, performing interior and exterior searches of vehicles. (Tr. at 110-12) For certification, the trainer puts out a minimum of one gram, but Officer Bunney testified that a dog can smell the residue left behind even after the narcotics are removed. (Tr. at 119) Angus has never failed a certification. (Tr. at 113) Officer Bunney testified that to his knowledge, Angus has never missed finding narcotics inside a vehicle when narcotics were actually found to be present. (Tr. at 121)

14. The white substance contained within the baggies which was recovered from the engine compartment of the vehicle was tested and found to contain 504 grams of methamphetamine. (Tr. at 37-38)

15. Officer Stauch did not ask defendant Fox any questions after he was placed under arrest. (Tr. at 78)

### III. DISCUSSION

Defendant Fox seeks to suppress the items discovered under the hood of the vehicle "because 1) the search was not a lawful search incident to an arrest and 2) the search went beyond the scope of a lawful inventory search."[2] (Motion to Suppress (doc #19) at 2) The government responds that the search was a lawful search done incident to arrest and was further justified under the

---

[2]The government is not arguing that the search can be justified as an inventory search. (Tr. at 43-44)

5

"'automobile exception,' which authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." (Government's Response at 5) In addition, the government argues that the evidence should not be suppressed based on the doctrine of inevitable discovery. (Id. at 8)

### A. The Initial Stop and Arrest

The initial stop of defendant Fox's vehicle was lawful. As the Eighth Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of the vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). Prior to pulling the vehicle over, Officer Stauch observed the driver commit a traffic violation, that is he crossed the center line. (See Fact No. 6, supra)

In addition, prior to pulling the vehicle over, Officer Stauch believed the driver of the vehicle had a suspended license and outstanding warrants. (See Fact Nos. 3 and 6, supra) Police may conduct a brief investigatory stop of a vehicle and its occupants based solely on the "reasonable suspicion" that a person for whom there is an outstanding arrest warrant is present in the vehicle. See United States v. White, 162 Fed. Appx. 520, 523 (6th Cir. 2006); United States v. Tellez, 11 F.3d 530, 532-33 (5th Cir. 1993), cert. denied, 511 U.S. 1060 (1994). Regardless of whether defendant Fox committed a traffic violation, Officer Stauch had reasonable suspicion to believe that Fox was in the vehicle and was, therefore, justified in stopping it.

Both the traffic violation and the information regarding the suspended license and outstanding warrants provided probable cause to stop the vehicle. The fact that Officer Stauch had other motives for wanting to stop the vehicle does not invalidate the traffic stop. In United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991), the Eighth Circuit Court of Appeals found:

> In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

Id. at 501. See also United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop"); United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006)(officer had probable cause to conduct traffic stop when he observed minor traffic violation, even if traffic stop was pretext for other investigation).

The driver of the vehicle identified himself as Allen Fox and presented his driver's license. (See Fact No. 7, supra) Officer Stauch confirmed through dispatch that Fox had a suspended driver's license and warrants out of Kansas City and Independence. (Id.) Fox was arrested for driving while suspended and on the warrants. (See Fact No. 8, supra) The Court finds that the officers had probable cause to place defendant Fox under arrest.

    B.    Warrantless Search

In Arizona v. Gant, 556 U.S. 332 (2009), the United States Supreme Court provided the following basic guidance when analyzing a warrantless search:

> Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967)(footnote omitted).

Gant, 556 U.S. at 338.

    1.    Search Incident to Arrest

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest. ... The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." Gant, 556 U.S. at 338 (citations omitted). Officer Stauch did not characterize the search as one done incident to arrest,[3] but in its response, the government argues that the search can be justified as a search done incident to arrest.

Where there is no possibility that an arrestee could reach into his vehicle and obtain a

---

[3] Officer Stauch testified that he searched the vehicle based on probable cause to believe that the vehicle contained illegal drugs. (See Fact No. 9, supra)

7

weapon, there is no longer authority for police to search a vehicle as a search incident to arrest in the interest of officer safety given the Supreme Court's decision in Gant, 556 U.S. at 343. However, the Gant court found that a search incident to arrest is justified if it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. Id. While Officer Stauch had suspicions that defendant Fox was transporting illegal drugs, Fox was not arrested for possession of illegal drugs. Fox was arrested for driving while suspended and on the warrants. (See Fact No. 8, supra) Given the other justification for conducting the search, the Court need not reach the issue of whether the search would also be proper under the Gant decision given the fact that Fox was arrested on a felony drug warrant.[4]

2. Automobile Exception

In Arizona v. Gant, 556 U.S. 332 (2009), the Court listed other established exceptions to the warrant requirement, including the "automobile exception." The Court stated:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. ... If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. ... Ross allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader.

Gant, 556 U.S. at 346-47. The Ross case involved a situation quite similar to that before this Court. In Ross, officers, acting on information from an informant that a described individual was selling narcotics kept in the trunk of a certain car parked at a specified location, drove to the location, found the car there and a short while later stopped the car and arrested the driver (Ross), who matched the informant's description. 456 U.S. at 800-01. The officers opened the car's trunk, found a closed brown paper bag, and after opening the bag, discovered glassine bags containing white powder (later determined to be heroin). Id. at 801. The officers then drove the car to headquarters, where another warrantless search of the trunk revealed a zippered leather pouch containing cash. Id. The Supreme

---

[4] Prior to pulling Fox over, Officer Stauch had discovered that Fox had a felony drug warrant. (See Fact No. 4, supra)

8

Case 4:11-cr-00202-BCW   Document 46   Filed 02/23/12   Page 8 of 12

Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate judge could authorize by warrant. Id. at 800. The probable cause determination must be based on facts that could justify the issuance of a warrant by a magistrate judge. Id. at 808.

"Probable cause exists 'where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006)(quoting United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005)). An informant's tip can be sufficient to establish probable cause if the tip is corroborated by independent evidence. See United States v. Gabrio, 295 F.3d 880, 883 (8th Cir.), cert. denied, 537 U.S. 962 (2002). "[I]ndependent corroboration bolsters the reliability and credibility of the informant's information, and thus, the finding of probable cause." United States v. Williams, 10 F.3d 590, 594 (8th Cir. 1993).

The Court finds the following facts were present and, thus, available to Officer Stauch to justify the warrantless search at the time the search took place. On August 2, 2011, Officer Stauch obtained information from a confidential source, who he had not used before, that someone by the name of Allen, who drove a silver Cadillac, provided the source with methamphetamine.[5] (See Fact Nos. 1 and 2, supra) The source advised that Allen usually carried a pound of methamphetamine with him, sometimes in the engine compartment of the Cadillac, and gave the route that Allen traveled when he delivered drugs. (See Fact No. 2, supra) That same night, Officer Stauch observed a silver Cadillac in the area the confidential source said Allen traveled when he delivered drugs. (See Fact No. 3, supra) Officer Stauch had dispatch run the plates on the Cadillac and they came back to an Allen Fox who had a suspended license and warrants out for his arrest. (Id.) Within the next few days, Officer Stauch researched the warrants for Allen Fox and discovered that he had a

---

[5]"[S]tatements against the penal interest of an informant naturally carry considerable weight." United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996).

felony warrant for drugs. (See Fact No. 4, supra) Thus, Officer Stauch corroborated information from the confidential source, i.e. that an "Allen" who drove a silver Cadillac in a certain area was involved in drugs. On August 11, 2011, just nine days after he obtained information from the confidential source, Officer Stauch again observed the silver Cadillac in the area the source said Allen traveled when he delivered drugs. (See Fact No. 5, supra) It appeared to Officer Stauch that when the driver of the silver Cadillac observed the police car following him, he drove in a manner as if to elude police. (Id.) After being pulled over, the driver of the silver Cadillac, Allen Fox, appeared shaky and nervous and would not look at Officer Stauch. (See Fact No. 7, supra) Fox told Officer Stauch that he was in the area because he was going to a friend's house, but he was not able to say who the friend was or where the friend resided. (Id.) Based on these facts, the Court finds that Officer Stauch had probable cause to believe that methamphetamine was concealed within the vehicle. Thus, pursuant to the automobile exception, Officer Stauch was authorized to conduct a warrantless search of the vehicle that was as thorough as a search authorized by warrant.

        C.        Inevitable Discovery

However, even if the warrantless search of the vehicle were not justified by the automobile exception prior to the alert by the drug dog, the search would still be upheld based on inevitable discovery. The inevitable discovery doctrine provides that if evidence, otherwise to be suppressed under the exclusionary rule, ultimately or inevitably would have been discovered by lawful means, the exclusionary rule does not apply. See United States v. James, 353 F.3d 606, 616-17 (8th Cir. 2003). The Eighth Circuit has articulated the standards for inevitable discovery as follows:

> The test for inevitable discovery ... includes two elements. First, there must be an ongoing line of investigation that is distinct from the impermissible or unlawful technique. Second, there must be a showing of a reasonable probability that the permissible line of investigation would have led to the independent discovery of the evidence. The required standard of proof on this evidentiary issue is a simple preponderance of the evidence, not proof beyond a reasonable doubt.

United States v. Villalba-Alvarado, 345 F.3d 1007, 1019-20 (8th Cir. 2003).

As set forth in United States v. Hill, 386 F.3d 855 (8th Cir. 2004), the following evidence provided officers with probable cause to search a vehicle without a warrant pursuant to the

10

Case 4:11-cr-00202-BCW   Document 46   Filed 02/23/12   Page 10 of 12

automobile exception:

> Given Hill's nervous behavior, his warrant for a controlled substance crime, his reputation for engaging in drug activity, and, most importantly, the indication from a qualified drug dog that drugs were in the vehicle, we hold the district court did not err in finding there was probable cause to search the vehicle's interior for such contraband.

Id. at 858. See also United States v. Bloomfield, 40 F.3d 910, 919 (8th Cir. 1994)("A dog's identification of drugs ... in a car provides probable cause that drugs are present. ... Once probable cause is established, a car can be searched without a warrant under the automobile exception to the warrant requirement.")

In the case before this Court, Officer Stauch requested a K-9 unit to respond to the car stop prior to any search taking place. (See Fact No. 6, supra) This ongoing line of investigation is distinct from the search that took place after the K-9 unit was summoned, but prior to its arrival. Subsequent to the search and seizure of narcotics from the engine compartment, a qualified drug dog alerted to the area from where the narcotics had been removed. (See Fact No. 12, supra) Although the hood of the vehicle was open, the dog's handler testified that based on his experience, the dog would have hit on the fender/wheel well area even if the hood had been closed because the odor would have come out from the engine compartment through the wheel well. (Id.)

The Court finds that there is a reasonable probability that the drugs would have been discovered in the engine compartment when the K-9 unit arrived at the scene. If the officers had not already searched the vehicle prior to the K-9 unit's arrival, the permissible line of investigation, that is the drug dog's search of the outside of the vehicle, would have led to the independent discovery of the evidence. The indication from a qualified drug dog that drugs were in the vehicle along with the other factors present, i.e. that defendant Fox was exhibiting nervous behavior, he had a warrant for a controlled substance crime and he had a reputation for engaging in drug activity (see Fact Nos. 2, 4 and 7, supra), clearly warrant a finding that there was probable cause to search the vehicle for such contraband pursuant to United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004). Thus, the evidence should not be excluded based on the inevitable discovery doctrine.

11

## IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant Fox's Motion to Suppress (doc #19).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                */s/ Sarah W. Hays*
                                                SARAH W. HAYS
                                   UNITED STATES MAGISTRATE JUDGE